<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOHN DELBRIDGE

     Petitioner,

v.

TERRY MOORE, Administrator,
East Jersey State Prison,

and

PETER C. HARVEY,
Attorney General of New Jersey,

    Respondents.

Civ. No. 03-2793 (WGB)

<u>O P I N I O N</u>

<u>APPEARANCES</u>

John Delbridge, No. 264413
East Jersey State Prison
Lock Bag R
Rahway, New Jersey 07065

    Petitioner, Pro Se


Peter C. Harvey
Attorney General of New Jersey

By:  Linda K. Danielson
     Deputy Attorney General
     Division of Criminal Justice
     Appellate Bureau
     P.O. Box 086
     Trenton, New Jersey 08625

     Attorneys for Respondents

**BASSLER, SENIOR DISTRICT JUDGE:**

Petitioner, John Delbridge ("Petitioner"), a state prisoner proceeding pro se, files this petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth in this Opinion, Petitioner's request for habeas corpus relief is **denied.**

I.   <u>BACKGROUND</u>

On the evening of July 16, 1992, Theresa Szymtkowski, Rita Kowalik and Edward Timoldi returned to Szymtkowski's Jersey City apartment. Unable to locate her keys, Szymtkowski began to ring the doorbell to awaken her husband inside. Timoldi and Kowalik stood behind Szymtkowski on the steps of the porch. Kowalik was holding both women's purses at the time.

An automobile pulled up and two black men approached the victims. One of the men, later identified as Delbridge, announced, "This is a robbery!" while brandishing a silver handgun. The second assailant, Melvin Champion, grabbed the two purses from Kowalik. The witnesses then heard a shot and saw Szymtkowski lying down on the porch and bleeding. Szymtkowski had been shot in the neck and died five days later from internal hemorrhaging.

After the robbery, Albert Henderson was discovered passing the checks stolen from Szymtkowski and Kowalik. Henderson told police that he had received the checks from Delbridge and

Champion.  Shortly thereafter, the police showed Kowalik a photo array containing pictures of Delbridge and Champion.  Kowalik identified Delbridge's picture as "similar" to the man who had shot Szymtkowski.  Henderson pled guilty to conspiracy to utter forged checks and agreed to record his telephone conversations with Delbridge.  At that time, Delbridge was in prison on unrelated charges.

In one telephone conversation, Henderson informed Delbridge that his name was mentioned in conjunction with an incident in Bayonne.  Delbridge said to Henderson, "Na, that wasn't in Bayonne."  Delbridge also identified Champion, by his nickname "Al-Amin," as someone else involved in the incident.  Henderson informed Delbridge that Champion was arrested and was going to testify for the state.  Delbridge then told Henderson that he had shot a lady.

II.  <u>DISCUSSION</u>

A.  <u>Procedural History</u>

Tried to a jury, Delbridge was convicted of felony murder, <u>N.J.S.A.</u> 2C:11-3a(3), and armed robbery, <u>N.J.S.A.</u> 2C:15-1.  <u>State v. Delbridge</u>, A-712-94T4 (N.J. Super. Ct. Jun. 30, 1994). Delbridge was sentenced to life imprisonment with thirty years of parole ineligibility.

Delbridge appealed the judgement of conviction on the grounds that (1) Delbridge was denied due process as a result of

-3-

several rulings of the trial court which ultimately permitted a positive in-court identification by a witness who could not positively identify Delbridge in pretrial proceedings; (2) the trial court erred in its charge to the jury by instructing that the witness identified Delbridge; (3) Delbridge was deprived of his Fifth Amendment right to due process and his Sixth Amendment right to the effective assistance of counsel by the omission of a jury charge on second degree robbery and the affirmative defense to felony murder; and (4) the sentence of life imprisonment could not reasonably have been made upon a proper weighing of the aggravating and mitigating factors.  The Superior Court, Appellate Division, determined that Delbridge's claims had no merit and affirmed the judgment of conviction.  State v. Delbridge, A-712-94T4 (App. Div. Dec. 23, 1996).  The New Jersey Supreme Court denied certification on April 24, 1997.  State v. Delbridge, 149 N.J. 142 (1997).

Delbridge filed a timely pro se brief in support of his petition for post-conviction relief ("PCR") on April 13, 1999. The PCR court determined that Delbridge's PCR arguments were procedurally barred, under Rule 3:22-4, because they could or should have been raised on direct appeal, or had been raised and decided adversely to Delbridge.  The PCR court also concluded that the claims were "substantively without merit."  State v. Delbridge, Indictment No. 962-04-93 (N.J. Super. Ct. Law Div.

-4-

Feb. 21, 2001).  Delbridge's petition for PCR was denied without
an evidentiary hearing on February 21, 2001.  Id.  Delbridge
appealed to the Appellate Division who agreed with the reasoning
set forth in the PCR Court's opinion and affirmed the decision.
State v. Delbridge, A-3978-00T4 (N.J. Super. Ct. App. Div. Jan 9,
2003).  The New Jersey Supreme Court denied certification on
March 18, 2003.  State v. Delbridge, 176 N.J. 72 (2003).
Delbridge filed this application for federal habeas relief on
August 27, 2004.

In this petition, Delbridge raises five grounds for relief.
He first claims that he was denied due process of a fair trial
when the trial court permitted an in-court identification by a
witness who was unable to make an out-of-court identification.
He next contends that his Sixth Amendment right to counsel was
violated by the admission of recorded conversations between
Delbridge and Henderson.  Third, Delbridge argues that the trial
court erred in its construction of various jury instructions.
Fourth, Delbridge claims that he was denied due process by the
introduction of "other crimes evidence" by way of recorded
statements and by the admission of police "mug shots."  Finally,
Delbridge claims that he was denied the effective assistance of
trial and appellate counsel.

B.  Ground One

Delbridge's first ground for relief alleges that he was

denied due process of a fair trial when the trial court permitted a tainted in-court identification by a witness who was unable to make a positive out-of-court identification prior to trial.

At the pretrial Wade hearing, Kowalik ("the witness") indicated that the perpetrator looked "similar" to Delbridge while viewing a photo array containing five other photographs, but that she could not be sure because the assailants wore baseball caps during the commission of the offenses.  At the pretrial hearing, the witness stated that she could not recall exactly if it was the same man, but that "he looks like him."  At Delbridge's trial, the witness also made an uncertain identification of Delbridge as the gunman.  6T:111-19.

Delbridge points to the well established rule that a witness may not make an in-court identification if it is the unreliable product of a suggestive pretrial procedure.  Manson v. Brathwaite, 432 U.S. 98 (1997).  A court must determine whether the out-of-court identification was made under circumstances unnecessarily suggestive and conducive to an irreparable misidentification.  Id. at 105; Simmons v. United States, 390 U.S. 375, 383 (1968).  In evaluating this claim, the Appellate Division considered whether the pretrial Wade hearing was unnecessarily suggestive and determined that the photo arrays were not suggestive.  State v. Delbridge, A-712-94T4 (App. Div. Dec. 23, 1996) at 8.  That court determined that because the in-

-6-

court identification was not derived from a constitutionally impermissible pretrial identification procedure, allowing the in-court identification was permissible and merely raised issues of weight to be determined by the jury.  Id. at 10.  The Appellate Division then concluded that the witness could testify at trial consistent with her pretrial statements.  Id.

This Court is not permitted to grant a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court unless the adjudication of the claim resulted in a decision that was "contrary to," or "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Because the New Jersey courts reasonably applied Federal law to the facts at hand, the Court finds that Delbridge is not entitled to habeas relief on this claim.

The Appellate Division relied on two state cases, as well as United States v. Domina, for the principle that there is no constitutional rule that requires a court to take measures to limit the suggestibility of an in-court identification.  784 F.2d 1361, 1368 (2d Cir. 1986), cert. denied, 479 US 1038 (1987).  Delbridge is unable to demonstrate that he is entitled to habeas relief on this claim because "[t]here is no clear Supreme Court

holding that a witness" who was unable to identify the accused at
an earlier pretrial identification procedure "is precluded from
making an in-court identification merely because the
circumstances are inherently suggestive." Kennaugh v. Miller,
143 F.Supp.2d 431, 432 (E.D.N.Y. 2001), aff'd, 289 F.3d 36 (2d
Cir.); cert. denied, 537 US 909 (2002); see United States v.
Domina, 784 F.2d at 1368.

After a review of the applicable case law, the Court agrees
that there is no clear Supreme Court holding that mandates that a
witness who is unable to identify the accused at an earlier
pretrial proceeding is precluded from making an in-court
identification merely because the circumstances are inherently
suggestive.  The Supreme Court has not yet addressed how the
constitutionality of an in-court identification under these
circumstances should be analyzed.  See United States v. Beeler,
62 F.Supp.2d 136, 141 (D. Me. 1999).  Accordingly, the Court
finds that the state courts' application of United States v.
Domina was reasonable.  Absent a Supreme Court precedent
considering this point, Delbridge is unable to establish that the
adverse decision on his claims were "contrary to" established
federal law or an "unreasonable application" thereof.  Therefore,
Delbridge is not entitled to habeas relief on this ground.

C.  Ground Two

Delbridge claims that his Sixth Amendment right to counsel

-8-

was violated when his telephone conversations were recorded by Henderson.  The PCR court determined that this claim was procedurally barred pursuant to New Jersey Court Rule 3:22-4.  State v. Delbridge, Indictment No. 962-04-93 (N.J. Super. Ct. Law Div. Feb. 21, 2001) at 7.  If a state prisoner has defaulted his federal claims in state court, pursuant to an independent and adequate state procedural rule, then the federal claims may be barred from federal habeas review.  Wainwright v. Sykes, 433 U.S. 72 (1977).  To overcome the procedural bar the prisoner must be able to demonstrate cause for the default and actual prejudice, or that failure to review the claims would result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989); Michigan v. Long, 463 U.S. 1032, 1041 (1983); Hull v. Kyler, 190 F.3d 88, 97 (3d Cir. 1999).  Because Delbridge has defaulted this claim in state court and is unable to satisfy the "cause and prejudice" test set forth in Coleman, the Court is precluded from habeas review.

To demonstrate cause, a Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule."  Coleman at 753; Murray v. Carrier, 477 U.S. 478, 488 (1986).  Where cause is the result of a Delbridge's attorney's ignorance or inadvertence, Delbridge must bear the consequences of his attorney's error

-9-

except where the procedural default is the result of ineffective assistance of counsel; then, Delbridge's Sixth Amendment right to counsel is seen as an external factor "imputed to the state". <u>Coleman</u> at 753-754, <u>citing</u> <u>Carrier</u> at 488. Delbridge must further show how the outcome of his case was prejudiced by his counsel's ineffectiveness. <u>Id.</u>; <u>Strickland v Washington</u>, 466 U.S. 687, 694 (1984).

However, where cause and prejudice are absent, a petitioner may supplement his constitutional claims with "a colorable showing of factual innocence" to show that failure of federal habeas review would result in a fundamental miscarriage of justice. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. at 496; <u>Hull v. Freeman</u>, 991 F.2d 86, 91 (3d Cir. 1993); <u>Wise v. Fulcomer</u>, 958 F.2d 30, 34 (3d Cir. 1992).

Delbridge contends that his counsel was ineffective for failing to follow up on the Sixth Amendment claim raised during pretrial arguments. Because the Court finds, <u>infra</u>, that Delbridge was not denied the effective assistance of counsel, Delbridge is unable to demonstrate a "cause" for his procedural default. Delbridge asserts that his trial counsel was ineffective for failing to ask for a ruling on the Sixth Amendment issue prior to trial. This claim in no way addresses Delbridge's failure to bring this claim to the Appellate Division on direct appeal. Furthermore, Delbridge makes no attempt to

-10-

show factual innocence and that his conviction results in a fundamental miscarriage of justice.

Because Delbridge has defaulted this claim in the state courts and is unable to satisfy the "cause and prejudice" test set forth in <u>Coleman</u>, this Court is precluded from federal habeas review on Delbridge's Sixth Amendment claim.

D.   <u>Ground Three</u>

Delbridge contends that the trial court violated Delbridge's due process rights by charging the jury with faulty jury instructions.  Delbridge specifically alleges that the trial court erred in the following respects: (1) by stating to the jury that a witness identified Delbridge; (2) that the trial court failed to charge the "non-slayer" affirmative defense to the felony murder charge; and (3) that the trial court failed to charge a lesser offense of second degree robbery.

As a starting matter, the Court notes that these claims have not been exhausted in the state courts because Delbridge did not frame his arguments in federal constitutional terms.  To satisfy the exhaustion doctrine the petitioner must "fairly present" the same claim sought to be considered by the federal court to the state courts, giving those courts the first opportunity to consider the claim.  <u>Picard v. Connor</u>, 404 U.S. 270 (1971); <u>Anderson v. harless</u>, 459 U.S. 4 (1982); <u>Duncan v. Henry</u>, 513 U.S. 364 (1995)(per curiam).

However, an exception to the exhaustion doctrine may be made if there is no opportunity to obtain redress in state court. Duckworth v. Serrano, 454 U.S. 1, 3 (1981). The federal court must be able to say with certainty that the state courts will not consider the substantive claim before exhaustion will be excused. Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001). This Court believes that in all probability the state courts would find that a subsequent petition for PCR on this claim would be barred by New Jersey Court Rule 3:22-5, which precludes claims that have already been adjudicated, because Delbridge challenged these jury instructions on direct appeal. Additionally, it is likely that the state courts could find the claims precluded by Rule 3:22-15, which bars claims raised more than five years after a conviction unless the assertion that the sentence is illegal. Delbridge does not allege that his sentence is illegal. Therefore, the exhaustion requirement will be considered satisfied, although the claim has not been "fairly presented" to the state courts, "because there is 'an absence of available State corrective processes.'" See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

Because the Court finds that satisfaction of the exhaustion requirement would be futile, and is therefore excused, these claims will therefore be subject to a procedural default in the federal courts and can not be considered unless the petitioner

-12-

can establish "cause" for the default and prejudice resulting therefrom or a "fundamental miscarriage of justice" to excuse the default.  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).  Delbridge has not satisfactorily demonstrated any cause and prejudice in regards to the claims challenging the jury instructions at all.  Furthermore, Delbridge does not attempt to claim actual innocence to support a finding that this conviction evidences a "fundamental miscarriage of justice."  Because Delbridge makes no showing to overcome the procedural default, this Court is precluded from habeas review on these claims.

Furthermore, the Court is suspect as to the extent to which faulty jury instructions will raise a violation of due process rights of a constitutional magnitude.  This Court is not permitted to grant a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court unless the adjudication of the claim resulted in a decision that was "contrary to," or "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. Sec. 2254(d).

Federal habeas review does not lie for errors of state law and, as a general rule, jury instructions can not be a basis for

the granting of federal habeas corpus relief.  Estelle v.
McGuire, 502 U.S. at 67; Williams v. Lockhart, 736 F.2d 1264,
1267 (8th Cir. 1984); Grecco v. O'Lone, 661 F.Supp. 408, 412
(D.N.J. 1987).  Federal courts may only interfere to rectify
wrongs of a constitutional dimension.  Johnson v. Rosemeyer, 117
F.3d 104, 109 (3d Cir. 1997); 28 U.S.C. 2254(a).  Furthermore, a
writ may not issue unless the "jury instruction, by itself, so
infected the entire trial that the resulting conviction violates
due process." Cupp v. Naughten, 414 U.S. 147 (1973).  Because
this Court may only grant habeas relief for a violation of
established Federal law, these claims will only be evaluated to
the extent that they raise questions of a constitutional
dimension.  28 U.S.C. 2254(d).

After an independent review of the trial transcript, this
Court finds that the instructions provided to the jury adequately
explained their role in evaluating the identification of
Delbridge.  Delbridge contends that the trial judge erred by
telling the jury that Kowalik "identified" Delbridge.  In
charging the jury, the judge stated:

> So, in order to meet its burden with
> respect to the identification of the
> Defendant, the State has presented the
> testimony of Ms. Rita Kowalik and also Mr.
> Melvin Champion.
>
> According to the witnesses, the
> identification [sic], they both made
> identification of Mr. Delbridge in Court as
> the person being present at the scene at the

-14-

time.  And it was based upon the observations and perceptions which they made of the defendant at the scene at the time the offense was being committed.

It is your function as jurors to determine what weight, if any, to give this testimony.  You must decide whether it is sufficiently reliable evidence upon which to conclude that the defendant is the person who committed the offense charged.

In going about your task, you should consider the testimony of the witnesses in the light of the customary criteria concerning credibility as I just explained it to you.  It is particularly appropriate that you consider the capacity, or the ability, of the witness to make observations or perceptions as you gauge it to be and that you consider the opportunity that the witness had at the time and under all the attendant circumstances at the scene for seeing that which they said they saw or that which he or she said she perceived or he perceived with regard to the identification of the person, or the defendant as the person who committed the alleged offense.

Unless the in-court identification results from the observations or perceptions of the defendant by the witness testifying, during the commission of the crime rather than being the product of an impression gained at the out-of-court identification procedure such as the photo array that was shown to Ms. Kowalik, then it should be afforded no weight. Thus, the ultimate issue of the trustworthiness of an in-court identification is for you to decide.

If after consideration of all the evidence, you have a reasonable doubt as to the identity of the defendant as the person present at the time and place of the crime, you must acquit him, because for him to be

-15-

guilty of these offenses... he must be present.

(9T:93-94).

Taken as a whole, the trial court's identification instruction adequately explained the jury's role in evaluating the identification of Delbridge.  The instructions were neither ambiguous or misleading and clearly explained that the jury was to determine whether the identification of Delbridge was reliable.  Therefore, this charge to the jury was not faulty and did not infringe upon Delbridge's due process rights.

Delbridge next challenges the omission of an instruction on the "non-slayer" defense to felony murder.  The Appellate Division found that Delbridge simply did not qualify for the statutory "non-slayer" affirmative defense.  Because this defense is a creation of state law, the decision whether or not to give it to the jury does not raise questions of a constitutional dimension.

Delbridge's final contention, that the trial court erred by failing to instruct about a lesser offense of second degree robbery, is similarly without merit.  Defense counsel argued against inclusion of the lesser offense because the evidence was insufficient to support a conviction on a second degree robbery.  Defense counsel may also have desired to eliminate another basis for a conviction on the felony murder charge.  In sum, each of Delbridge's allegations under this claim fail to establish a

-16-

violation of Federal law and therefore this Court can find no basis to award habeas relief.

Because Delbridge failed to exhaust these claims at the state level, and any attempt to remedy the omission at this point would be futile, Delbridge is found to be procedurally defaulted from raising these claims in this Court.  Furthermore, Delbridge has not demonstrated cause for his default and therefore this Court is precluded from habeas review on the claim.

E.   <u>Ground Four</u>

Delbridge argues that he was denied due process by the admission of the taped statement as well as by the admission of the "mug shots" at his trial.  The PCR court held that these claims were procedurally barred, pursuant to New Jersey Court Rule 3:22-4, because Delbridge failed to raise them in a prior proceeding and were substantively without merit.  <u>State v. Delbridge</u>, Indictment No. 962-04-93 (N.J. Super. Ct. Law Div. Feb. 21, 2001) at 7-8.  Accordingly, this Court is precluded from habeas review unless Delbridge can demonstrate cause for his default and actual prejudice resulting therefrom.  <u>Coleman</u> at 722.

Additionally, these claims are not cognizable in a federal habeas proceeding because Delbridge is alleging a violation of state evidentiary rules.  A federal court conducting habeas review is limited to determining whether a petitioner's custody

is in violation of federal law.  Estelle v. McGuire, 502 U.S. 62,
68 (1991); Engle v. Isaac, 456 U.S. 107, 119 (1982); 28 U.S.C.
Sec. 2241(c)(3).  "[F]ederal habeas corpus relief does not lie
for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780
(1990).  Therefore, this Court may only review this ground for
relief to the extent that it raises a claim of constitutional
magnitude.  Welch v. Burke, 49 F.Supp.2d 992, 1002 (E.D. Mich.
1999).

Delbridge claims that the trial court erred by failing to
provide a cautionary instruction regarding Delbridge's
confinement at the time that the taped statement was taken.  He
also asserts that the court erred in its instruction on the
appropriate use of the photographs.  Delbridge claims that the
references to other crimes in the taped statement were irrelevant
to any material issues in the case and that any probative value
of the evidence was clearly outweighed by its prejudicial
effects.  To the extent that these assertions set forth a federal
claim, the Court does not find that Delbridge was denied due
process of a fair trial.

A review of the record indicates that the trial court did in
fact give an appropriate limiting instruction to the jury
regarding Delbridge's incarceration.  The trial court stated:

> Let me advise the jury.  Now, you have heard
> testimony of the Defendant being in custody.
> That testimony is ordinarily not allowed to go
> forth to you.  It was allowed to come in only

-18-

> for the purpose of establishing where the
> Defendant was at a particular point and time
> and for <u>no other reason</u>.

> (8T: 56-15; emphasis added)

The PCR court determined that Delbridge's argument is without merit because the trial court did not prejudice Delbridge with any references to his inmate status.  Furthermore, Delbridge makes no effort to demonstrate cause for his default on this claim and therefore this Court is barred from habeas review.

Delbridge also claims that he was denied due process by the use of "other crimes evidence" resulting from the introduction of the photographic array that was shown to a witness in the case. Delbridge contends that these "mug shots" are indicative of past criminal history and therefore a cautionary instruction was necessary.  Delbridge claims that the failure of the trial court to provide a cautionary instruction unfairly prejudiced his right to a fair trial.

The record makes it clear that the trial court masked all markings on the photos and any indication that the photo was a "mug shot" were covered before being shown to the jury.  The trial court instructed the attorneys to mask all markings on the photographs so that the jury would see only "the front, nothing else." 2T:145-2.  As indicated above, this Court may not conduct habeas review for mere errors of state law.  <u>Rosemeyer</u>, 117 F.3d 104 (3d Cir. 1997).  To the extent that Delbridge is claiming a

-19-

violation of a constitutional magnitude, this Court finds that
this claim is without merit.  Additionally, Delbridge fails to
demonstrate cause for his default on this claim in the state
courts.  Accordingly, this Court is procedurally barred from
habeas review on these claims.

    F.  <u>Ground Five</u>

    In this petition, Delbridge alleges that six specific acts
and omissions of his attorney fell below an objective standard of
reasonableness and constituted deficient performance.  Delbridge
claims that defense counsel was ineffective because counsel (1)
conceded Delbridge's presence at the crime scene; (2) failed to
object to the other crimes evidence in the taped statements; (3)
failed to renew the Sixth Amendment argument before trail to
challenge the admission of the taped conversations; (4) made
prejudicial statements in summation; and (5) failed to conduct a
meaningful pre-trial investigation.  Because each of these acts
by defense counsel fail to evidence deficient performance,
Delbridge's ineffective assistance of counsel claim fails to
satisfy the <u>Strickland</u> test.

    The Sixth Amendment right to assistance of counsel means
that a person has a right to effective assistance of counsel.
<u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970); <u>United
States v. Moscony</u>, 927 F.2d 742, 748 (3d Cir. 1991).  The
standard for demonstrating ineffective assistance of counsel is

very difficult to satisfy.  <u>See</u> <u>Strickland v. Washington</u>, 466
U.S. 668, 687 (1984).  To meet the standard, a petitioner must
show: (1) that the attorney's performance was deficient; and (2)
that the performance prejudiced the petitioner's defense.  <u>Id.</u>

An attorney's performance may only be considered deficient
upon a showing by the petitioner that it failed to meet an
"objective standard of reasonableness."  <u>Id.</u> at 688.  The
petitioner must demonstrate that her attorney committed egregious
errors that were unreasonable in light of prevailing professional
norms.  <u>Id.</u>  To prove an ineffective assistance claim, the
petitioner must overcome the strong presumption that counsel's
conduct represents sound legal strategy.  <u>Id.</u> at 689.  As a
result, judicial scrutiny in such cases is highly deferential and
highly fact-based.  <u>Id.</u> at 690.  Because of the factual nature of
ineffectiveness claims, the petitioner must identify specific
acts or omissions of her attorney that would offend a reasonable
professional judgment.  <u>Id.</u> at 690.  "[B]ald assertions and
conclusory allegations" will not support a claim and may be
dismissed without an evidentiary hearing.  <u>Mayberry v. Petsock</u>,
821 F.2d 179, 185 (3d Cir. 1987).

In order to make out a successful claim of ineffective
assistance of counsel a petitioner must also show that his trial
or appeal was prejudiced such that a different outcome would have
resulted but for the deficient representation.  <u>Strickland v.</u>

-21-

Washington, 466 U.S. 668 (1984); United States v. Cronic, 466 U.S. 648 (1984).  Habeas relief is not appropriate unless a prisoner "affirmatively establishes the likelihood of an unreliable verdict."  McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir.), cert. denied, 510 US 1028 (1993); see Cronic, 466 US 648, 659 (1984).

Delbridge first alleges that counsel admitted Delbridge's presence at the crime scene.  However, a review of the record reveals that counsel argued that after the jury determined that Champion was the shooter, "even if [Delbridge] were present [at the scene of the crime]," he could not be guilty of purposeful murder.  9T:48-17.  In assessing the adequacy of counsel's performance, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.  Strickland, 483 U.S. at 690.  In this instance, defense counsel took a reasonable strategic approach to demonstrating the impropriety of a purposeful murder charge against Delbridge.  Furthermore, Delbridge's contention that appellate counsel also prejudiced him in this regard is similarly unavailing.  Therefore, the Court finds that Delbridge's first factual allegation fails to demonstrate deficient performance by counsel.

Delbridge argument that he received ineffective assistance by counsel's failure to object to portions of the taped

statements is also without merit.  Counsel's decision not to
object to portions of the tape referring to other crimes
constituted a reasonable strategic approach in presenting
Delbridge's defense.  By allowing the Delbridge's statements
regarding his incarceration for a stolen car into evidence,
defense counsel laid a foundation for the defense that Delbridge
was framed by Henderson and Champion because he was already
incarcerated on a stolen car charge and that Delbridge was more
concerned with that charge than with the robbery and homicide.
The Court finds that Delbridge's claim, that counsel was
ineffective for failing to object to portions of the taped
statement, fails to demonstrate performance that falls below an
objective standard of reasonableness.

    The third specific act that Delbridge asserts as evidence of
ineffective assistance of counsel is that his attorney failed to
renew a challenge to the admission of the taped conversations
based on the Sixth Amendment right to counsel.  However, a Sixth
Amendment challenge to the admission of these statements would
clearly have been futile.  The right to counsel does not attach
until a defendant is charged with the particular crime for which
he is being questioned.  See Illinois v. Perkins, 496 U.S. 292,
299 (1990); Texas v. Cobb, 532 U.S. 162, 167 (2001).  In this
case, Delbrige was incarcerated on unrelated charges stemming
from a car theft and therefore his right to counsel on the

robbery and murder charges had not yet attached.  Counsel will not be considered constitutionally ineffective for failing to raise a meritless argument.  Oken v. Corcoran, 220 F.3d 259, 269-70 (4th Cir. 2000), cert. denied, 531 U.S. 1165 (2001).  Accordingly, the Court does not find that this act of counsel constitutes deficient performance.[1]

Delbridge next contends that counsel was ineffective because of an allegedly prejudicial statement alluding to a stolen car made during summation.  A review of defense counsel's summation reveals that defendant's position was that Delbrige was more concerned about the stolen car charges when Henderson was questioning him about the shooting.  Counsel explains in his summation that the taped conversations were actually about the stolen car.  Counsel attempted to minimize the impact of these statements by showing that Delbridge was not discussing the robbery and murder on the recordings, but rather merely a stolen car.  Because counsel put forth a reasonable defense on behalf of Delbridge, the Court finds that this claim is unable to overcome "the strong presumption that counsel's conduct represents sound legal strategy."  Strickland at 689.

Delbridge's final contention is that counsel was ineffective

---

[1] See "Ground Two," supra (Delbridge's failure to demonstrate ineffective assistance of counsel additionally results in his failure to show cause for the procedural default on the related claim in Ground Two).

for failing to conduct a meaningful pre-trial investigation. Delbridge asserts that this is evidenced by counsel's failure to file the necessary motions to challenge all aspects of the tapes. As discussed above, any challenges to the tapes would have been futile and therefore counsel's omission can not constitute deficient performance.  Oken v. Corcoran, supra.  Furthermore, defense counsel attempted to use the contents of those tapes to his advantage in his summation, as discussed above.  In light of the above considerations, Delbridge has failed to demonstrate deficient performance of counsel on this claim.

Because Delbridge fails to demonstrate deficient performance of counsel on each of his factual bases, the Court finds that Delbridge's claim that he received ineffective assistance of counsel is without merit.

Delbridge further requests an evidentiary hearing on his claims of ineffective assistance of counsel.  A federal court must hold an evidentiary hearing if the state trier of fact did not afford the petitioner a "full and fair fact hearing."  28 U.S.C. § 2254(e)(1); Townsend v. Sain, 372 U.S. 293 (1963); Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).  Furthermore, a statutory presumption of correctness applies to state-court findings of fact.  Id.  In exercising its discretion, a court should "focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to

-25-

advance the petitioner's claim."  <u>Campbell v. Vaughn</u>, 209 F.3d 280, 287 (3d Cir. 2000).

The Court finds that there is no new information that has been presented to support Delbridge's claims.  A hearing would not advance Delbridge's claim of ineffective assistance of counsel and therefore Delbridge is not entitled to an evidentiary hearing.  Because the factual bases for Delbridge's ineffective assistance of counsel claim have been developed in the record by the state courts, the Court holds that an evidentiary hearing is not required in this matter.

III. <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is hereby **denied**.

An appropriate order accompanies this Opinion.

 /S/ WILLIAM G. BASSLER
William G. Bassler, U.S.S.D.J.

Dated: November 9, 2005